IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DUSTIN ZIMMERMAN,** *et al.*, | Civil No. 1:06-CV-1893 |
| Plaintiffs | |
| v. | JUDGE SYLVIA H. RAMBO |
| **CRAIG SCHAEFFER,** *et al.*, | |
| Defendants. | |

# MEMORANDUM

In this case, a number of current and former prisoners allege that they were abused by officials at the Mifflin County Correctional Facility ("MCCF") in Lewistown, Pennsylvania. Defendants are Craig Schaeffer, Ronald Bilger, Chuck Chambers, Kathy Weaver, Barry Kearns, and Bernie Zook—all of whom are corrections officers and prison officials at MCCF—and Mifflin County, Pennsylvania. Presently pending before the court is Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23. For the reasons that follow, the motion will not be granted, and Plaintiffs' claims for equitable relief will be dismissed for lack of standing.

**I.      Background**

  **A.   Facts**

Plaintiffs allege that they were abused by corrections officers at MCCF and that their treatment reflects a policy, practice, or custom of prisoner abuse in the facility. The allegations of each of the Plaintiffs as set forth in the second amended complaint, will be described in turn.

### 1.     **Dustin Zimmerman**

Dustin Zimmerman was an inmate at MCCF from June 2005 until December 2005 and again from May 2007 until July 2007. (Doc. 59 ¶ 5.) On September 11, 2005 Zimmerman and his cellmate were beaten, sprayed with pepper spray, and tasered by Defendants. (*Id*. ¶ 20.) Both Zimmerman and his cellmate were handcuffed and shackled, and Zimmerman was carried into the main booking area and placed in a restraint chair. (*Id*. ¶¶ 22, 23.) Defendant Bilger put Zimmerman in a chokehold while Defendants Shaeffer, Chambers, and Kearns restrained him. (*Id*. ¶¶ 22, 23.) While he was being restrained by the other defendants, Brian Taylor tasered Zimmerman. (*Id*. ¶ 24.) Zimmerman was bound to the chair for approximately 12 hours, and when he requested to use the bathroom, Defendants threw a diaper at him. (*Id*. ¶ 26.) Zimmerman was not permitted to clean the burning pepper spray from his skin for fifteen hours. (*Id*. ¶ 27.)

### 2.     **Gary Searer**

Gary Searer was an inmate at MCCF from March 2005 until March 2006. (*Id.* ¶ 6.) On November 8, 2005, Searer was removed from his cell by Defendants, and tied to a steel bed frame with plastic zip ties. (*Id*. ¶ 34.) Later he was put in a restraint chair. (*Id.*) Altogether, Searer was restrained for more than 50 hours on this occasion. (*Id.*) When Searer asked Defendants Weaver, Chambers, and Kearns to release him, they said that decision was up to Defendant Zook. (*Id*. ¶ 35-36.) Searer was released to his cell, where he found that the electric light had been removed and a steel plate had been placed over the window in the cell door so that the cell was dark all day. (*Id*. ¶ 37.) Searer remained in the dark for two months, and was denied showers for up to thirteen days at a time. (*Id*. ¶ 38.) Searer was also deprived of a mattress, sheets, and pillows for a two month period, and forced to sleep on the bare steel bed frame. (*Id*. ¶ 32.) Defendants also prevented

Sealer from sending or receiving mail, including information about his legal rights. (*Id*. ¶ 39.)  Searer also alleges that on at least one occasion prior to November 8, 2005, he was restrained by Defendants for more than 10 hours.  (*Id*. ¶ 33.)

### 3.     **Justin Herb**

Justin Herb was an inmate at MCCF on several occasions, including November 2006 to June 2007.  (*Id*. ¶ 7.)  On November 8, 2005, Defendants removed Herb from his cell and restrained him for over 50 hours both in a restraint chair and tied to a steel bed frame.  (*Id*. ¶ 45.)  While tied to the bed, Herb alleges that the zip ties were fastened so tight that he was unable to move.  (*Id.*)  When Herb was released from the restraints and returned to his cell, he found that the electric light had been removed and the window in the cell door had been removed.  (*Id*. ¶ 47.)  Herb's cell remained dark for two months, during which time he was also denied a mattress, sheets, or pillows to sleep on, and he was not permitted to send or receive mail.[1]  (*Id*. ¶ 48.)  When Herb began banging his head against his cell wall due to his distress at the conditions in his cell, he was removed from his cell and placed in restraints for 12 hours.  (*Id*. ¶¶ 49, 50.)  Herb alleges that he was restrained by Defendants on previous occasions, both in a restraint chair and tied to a steel bed.  (*Id*. ¶ 42.)  On one of these occasions when Herb was placed in a restraining chair, he was forced to wear hinge cuffs that were fastened too tight and caused his hands to become swollen.  (*Id*. ¶ 43.)

### 4.     **Raymond Sassaman**

Raymond Sassaman is currently an inmate at MCCF, and he was also detained there from November 2006 until June 2007.  (*Id*. ¶ 8.)  On March 16, 2007 Sassaman objected when ordered to leave his cell, and Defendants responded by

---

[1] According to Defendants, Plaintiffs Herb and Searer were assigned as cellmates during the time of the incidents in question.  (*See* Doc. 34 at 11 n.5.)

3

spraying his cell with pepper spray and threatening to taser him.  (*Id*. ¶¶ 54-55.)
Corrections officers took Sassaman, in handcuffs and shackled, to a Restricted
Housing Unit.  (*Id*. ¶ 55.)  Corrections Officer Reik pressed Sassaman's face against
a cell wall, then pulled him out of the cell and placed him in a restraint chair while
still handcuffed.  (*Id*. ¶ 56.)

Sassaman's hands were not properly placed in the depression in the
restraint chair, so the weight of his body was on his hands.  (*Id*. ¶¶ 58-59.)  When
Sassaman attempted to relieve the pressure on his hands and told the officers that he
was not properly placed in the chair, Corrections Officer Reik responded by
grabbing Sassaman by the neck and pushing him into the chair.  (*Id*. ¶ 62.)  As
Officer Reik was holding Sassasmon's neck, Defendant Kearns ordered Corrections
Officer Hoskovich to spray Sassaman in the face with pepper spray.  (*Id*. ¶ 62.)
Officer Hoskovich initially refused, but on the third request sprayed Sassaman's face
and mouth with pepper spray, causing him to lose consciousness.  (*Id*. ¶¶ 62-67.)
While unconscious and in the restraint chair, Sassaman was wheeled into a shower
and sprayed until he woke up.  (*Id*. ¶ 68.)  At this point, Sassaman was wheeled into
another cell where his hands were adjusted to fit properly in the restraining chair.
(*Id*. ¶ 71.)  He remained in the restraining chair for seven hours, during which time
his hands became soaked in the water and pepper spray that collected in the
depression of the chair.  (*Id*. ¶¶ 73-74.)  The officers refused his requests to cuff his
hands in front.  (*Id*. ¶ 74.)  Throughout this ordeal, Defendant Zook was present, and
at one point taunted Sassaman.  (*Id*. ¶¶ 70, 72.)

### 5. Matthew Burns

Matthew Burns was an inmate at MCCF on several occasions,
including November 2006 to June 2007.  (*Id*. ¶ 9.)  During this time, he alleges that
he was harassed and antagonized by corrections officers.  (*Id*. ¶ 77.)   In the spring

of 2007, Burns was waiting to visit the medical department when Corrections Officer Benny brought a food tray to his cell. (*Id.* ¶ 78.) Burns feared that the food had been tampered with because he saw Benny remove the tray from sight temporarily, so he refused to eat the food on the tray. (*Id.* ¶ 79.) Benny refused to provide another food tray. (*Id.*)

A short time later, when Defendant Kearns arrived to take Burns to the medical department, Burns requested another food tray. (*Id.* ¶ 80.) Kearns refused, and grabbed Burns by the arm, and then the neck and shoved him. (*Id.* ¶ 81.) At this point, a number of corrections officers arrived and threw Burns to the ground, handcuffed him, and kicked him. (*Id.* ¶ 82.) Burns was then dragged on the floor to his cell, where the officers slammed Burns' face into the side of the lower bunk, cutting him. (*Id.* ¶ 83.)

### 6. Other Inmates

Plaintiffs allege that Defendants have abused other inmates as well. According to the second amended complaint, on November 2004, an inmate named Josh Pennington was removed from his cell and tied to a steel bed frame with plastic zip ties with his hands bound above his head. (*Id.* ¶ 89.)  With several corrections officers observing, including Defendant Zook, Taylor struck Pennington in the testicles as he was tied to the bed. (*Id.* ¶ 91.) Pennington was bound to the bed for 10 hours and not permitted to use the bathroom. (*Id.* ¶ 92.)

At some point prior September 2005, according to Plaintiffs, Defendant Chambers slapped an inmate in the face while the inmate was restrained. (*Id.* ¶ 95.) On another occasion, Taylor held an inmate's legs while Defendant Zook stuck his fingers in the inmate's nose and pulled his head back. (*Id.* ¶ 96.)

**B.**       **Procedural History**

On September 26, 2006, Plaintiff Dustin Zimmerman filed a complaint against Defendants. (Doc. 1.) On June 27, 2007, an amended complaint was filed adding as Plaintiffs Gary Searer and Justin Herb. (Doc. 23.) A second amended complaint was filed on February 15, 2008 adding Raymond Sassaman and Matthew Burns as two additional Plaintiffs. (Doc. 59.)

In the second amended complaint, Plaintiffs bring two federal causes of action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated the Eighth Amendment by subjecting them to excessive force and unconstitutional conditions of confinement. Additionally, Plaintiffs raise two pendant state law claims for intentional infliction of emotional distress and assault and battery. Plaintiffs seek equitable relief on the federal claims in the form of a declaratory judgment that Defendants' practices are unconstitutional, and an injunction against these practices. Plaintiffs also seek compensatory damages, punitive damages, and attorney's fees on all claims.

On June 28, 2007, Plaintiffs filed a motion for class certification on the federal claims for the purpose of obtaining equitable relief only. (Doc. 24.) The proposed class is all current and future inmates of MCCF. The issue has been fully briefed and is ripe for disposition.

**II.**       **Discussion**

Plaintiffs seek certification of a class of all current and future inmates at MCCF for the purposes of obtaining equitable relief. Defendants oppose Plaintiffs' motion for class certification, arguing that Plaintiffs lack standing to seek equitable relief.

The Third Circuit has stated that "review of standing is a threshold inquiry, and that the proper disposition of a case in which the putative class plaintiff lacks standing is to dismiss the complaint—not to deny class certification—and to avoid reaching the merits of the claims presented." *Hassine v. Jeffes*, 846 F.2d 169, 176 (3d Cir. 1988); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 n.3 (1974). Defendants argue that Plaintiffs lack standing to seek future injunctive relief on behalf of themselves or as representatives of the proposed class because none of the Plaintiffs can "demonstrate a 'real and immediate' likelihood that he will suffer a *future* injury from Defendants' alleged conduct." (Doc. 34 at 8.) According to Defendants, Plaintiffs are barred from seeking injunctive relief by the Supreme Court's decisions in *O'Shea v. Littleton*, and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) because any alleged future threat to Plaintiffs is hypothetical. Plaintiffs respond that former inmates may have standing to challenge prison conditions because their situation falls within the category of cases "capable of repetition yet evading review."

The Constitution restricts the jurisdiction of the federal courts to actual "cases and controversies." U.S. Const. art. III, § 2, cl. 1. From this clause, courts have derived the closely related justiciability doctrines of standing and mootness. *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The doctrine of standing requires that a Plaintiff have a personal interest in the litigation at its outset. *Id.* Mootness, by contrast, becomes an issue when during the course of litigation, the plaintiff no longer has a stake in the litigation. *Powell v. McCormack*, 395 U.S. 486, 496-97 (1969).

In order to establish standing, "[t]he plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both 'real

7

and immediate,' not 'conjectural' or 'hypothetical.' " *Lyons*, 461 U.S. at 101-02 (citations omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Additionally, where injunctive relief is sought, a plaintiff must demonstrate that he is likely to suffer future injury from the defendant's threatened conduct. *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495-96. If none of the named plaintiffs can establish standing for himself, then none may seek relief on behalf of the class. *Id.* at 494.

Plaintiffs do not have standing to seek injunctive relief because they have not demonstrated that they are likely to suffer future injury at the hands of Defendants.[2] In the second amended complaint, Plaintiffs point to past instances of abuse and argue that Defendants have a "policy or practice of encouraging, condoning, tolerating, and failing to prevent abuse of inmates and violations of their constitutional rights,"(Doc. 16 ¶ 101), have "failed to adequately train and supervise staff at the facility" (*Id.*¶ 102), and have "created an environment that encourages corrections officers to employ excessive force and otherwise abuse inmates." (*Id* ¶ 103.) According to Plaintiffs, all present and future prisoners are at risk of harm due to Defendants' policies and the conditions of confinement at MCCF. (Doc. 108.) However, not one of the Plaintiffs has established that he is likely to be subject to abuse at the hands of Defendants in the immediate future.

The Supreme Court decisions in *Lyons* and *O'Shea* are particularly instructive on this point. In *Lyons*, a plaintiff who had been subjected to a

---

[2] The court notes that there is no doubt that Plaintiffs have established standing to seek damages for their injuries. In the second amended complaint, they claim that while serving at the MCCF, they were abused by prison officials in violation of the Eighth Amendment and state law and suffered injuries as a result.

chokehold by police during a traffic stop sought to enjoin the use of the procedure by the police in the future. 461 U.S. at 98. The Court held that the plaintiff lacked standing to enjoin the practice because he could not demonstrate that he would be subject to it in the future. *Id.* at 105-07. In order to establish standing, the Court held that the plaintiff "would have to credibly allege that he faced a realistic threat from the future application of the City's policy." *Id.* at 106. Similarly, in *O'Shea*, the Court held that civil rights demonstrators lacked standing to enjoin unconstitutional practices concerning bond-setting, sentencing, and fees for jury trials. 414 U.S. at 495. Because none of the plaintiffs had been arrested or faced criminal prosecution when the suit was filed, the Court held that it would require conjecture and speculation to determine whether the plaintiffs would face such an injury in the future. *Id.* at 497. By contrast, in *Roe v. Operation Rescue*, the Third Circuit held that a number of Philadelphia area abortion clinics had established standing to seek injunctive relief where an anti-abortion organization announced its intent to blockade Philadelphia abortion clinics in the near future. 919 F.2d at 864. Even though the clinics had not been specifically targeted by name, the announcement was sufficiently concrete and immediate to constitute a risk of future injury to the clinics. *Id.*

   In this case it is a matter of speculation whether any of Plaintiffs will be subject to unlawful abuse at the hands of Defendants in the future. Only two Plaintiffs—Zimmerman and Sassaman—were incarcerated at MCCF at the time the second amended complaint was filed,[3] and although they have described a number of terrible instances of abuse at the facility in the past, they have not alleged any additional facts to establish that they are likely to be subject to similar abusive

---

[3] The remaining Plaintiffs have all been released from MCCF, and thus no longer face a real and immediate threat of future injury at the facility.

practices in the future. The mere fact that Zimmerman and Sassaman were incarcerated at the facility at the time of filing is not sufficient because there is no allegation that every prisoner at the facility is subject to the practices described in the complaint. Instead, the complaint describes fewer than a dozen instances of similar, yet discrete instances of prisoner abuse over the course of approximately three years at the facility. The likelihood that Zimmerman or Searer will personally suffer abuse at the hands of Defendants in the immediate future is not sufficiently concrete.

This is particularly true because Plaintiffs allege that they were subject to unlawful excessive force and discipline at the hands of prison officials—a highly individualized and fact-intensive determination. Unlike other claims concerning prison conditions, such as double bunking or insufficient medical care, which by necessity involve almost every prisoner at a facility, excessive force claims require a balancing of the prison's need for the force with the force applied. *See Fuentes v Wagner*, 206 F.3d 335 (3d Cir. 2000). Thus, not only must Plaintiffs establish that they are likely to be subject to restraint or other force by Defendants in the future, they must also demonstrate the force that will be applied in the future will be unlawful. Plaintiffs have not met this burden with respect to their claims for future injunctive relief.

Instead, Plaintiffs argue that former inmates have standing to seek injunctive relief challenging practices that are capable of repetition yet evading review. In support of this argument, Plaintiffs cite *Gerstein v. Pugh*, 420 U.S. 103 (1975) and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). However, as Defendants point out, these cases discuss an exception to the *mootness* doctrine, not standing. For instance, in *Gerstein* a number of pretrial detainees who had been charged by prosecutor's information sought a judicial determination of probable

cause prior to trial. 420 U.S. at 105. At the time the complaint was filed, the plaintiffs had standing to seek injunctive relief because they been arrested but had not yet received a hearing. *Id*. However, by the time the case was decided, all the plaintiffs had been convicted, and thus there was no longer a live controversy for the plaintiffs. Nevertheless, the Court rejected defendants' mootness challenge, explaining:

> This case belongs, however, to that narrow class of cases in which the termination of a class representative's claims *does not moot* the claims of the unnamed members of the class. Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly 'capable of repetition, yet evading review.

*Id.* at 110 n.11 (emphasis added). Similarly, in *County of Riverside*, pretrial detainees sought an injunction requiring a probable cause determination within 36 hours of an arrest. 500 U.S. 44, 47 (1991). Because the plaintiffs had been arrested and had not yet received a probable cause determination at the time the complaint was filed, the Court held that they had standing to bring suit and that the case was not mooted when the plaintiffs finally received a probable case determination. *Id.* at 51. In neither case did the Court hold that the exception to the mootness doctrine could be invoked to establish standing. Accordingly, Plaintiffs have failed to establish standing to seek equitable relief and their claims must be dismissed.

Because Plaintiffs lack standing to seek equitable relief on their own behalf, their request for class certification of "all current and future inmates at Mifflin County Correctional Facility" must fail. (Doc. 25 at 3.) The court will dismiss Plaintiffs' claims for equitable relief and avoid ruling on the issue of class certification.

## III.     Conclusion

For the reasons stated above, Plaintiffs' claims for equitable relief will be dismissed, and it is unnecessary to reach the issue of class certification on that issue. An appropriate order will issue.

s/Sylvia H. Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: March 7, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DUSTIN ZIMMERMAN,** *et al.*, | Civil No. 1:06-CV-1893 |
| Plaintiffs | JUDGE SYLVIA H. RAMBO |
| v. | |
| **CRAIG SCHAEFFER,** *et al.*, | |
| Defendants. | |

# O R D E R

**IT IS HEREBY ORDERED THAT**:

(1) Plaintiffs' claims for injunctive relief are **DISMISSED** for lack of standing; and

(2) Plaintiffs' motion for class certification (Doc. 24) is **DENIED AS MOOT**.

                                                                s/Sylvia H. Rambo
                                                                 SYLVIA H. RAMBO
                                                                 United States District Judge

Dated: March 7, 2008.