IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DUSTIN ZIMMERMAN,** *et al.*, : Civil No. 1:06-CV-1893
:
        **Plaintiffs** : JUDGE SYLVIA H. RAMBO
:
        **v.** :
:
**CRAIG SCHAEFFER,** *et al.*, :
:
        **Defendants** :

**M E M O R A N D U M**

Before the court is Defendants' motion for severance and separate trials, (Doc. 130), and twelve motions in limine, (Docs. 118, 120, 122, 124, 126, 128, 132, 134, 136, 138, 140), filed by both Plaintiffs and Defendants in this case. The issues have been fully briefed and are ready for disposition. The court will address each motion individually.

**I.**     **Background**

The parties are intimately familiar with the facts of this case which have been fully outlined in the court's summary judgment memorandum issued on August 17, 2009. (Doc. 116.) Thus, only the facts pertinent to each motion will be discussed as necessary.

    **A.**     **Defendants' Motion for Severance and Separate Trials**

        **1. Procedural History**

On November 10, 2009, Defendants filed a motion for severance and separate trials for each Plaintiff in this case. (Doc. 130.) On November 20, 2009, Plaintiffs filed a brief in opposition to this motion. On November 25, 2009,

Defendants filed a reply brief. For the reasons that follow Defendants' motion will be denied.

## 2. Relevant Facts

These claims arise out of four instances of alleged misconduct by Defendants against five Plaintiffs.

The first instance occurs on September 11, 2005, and involves allegations by Plaintiff Zimmerman that Lieutenants Weaver, Chambers and Kearns, and Correction Officers ("COs") Taylor,[1] Bilger, and Shaeffer used excessive force in removing him from his cell and later restraining him. Zimmerman also brought these claims against Warden Zook and the Mifflin County Correctional Facility ("MCCF"). The second instance occurs on November 8, 2005, when Plaintiffs Searer and Herb allege Lieutenants Weaver, Chambers and Kearns, and COs Bilger and Shaeffer used excessive force in restraining them after an incident which occurred in their cell. These claims have also been brought against Warden Zook and MCCF. The third instance occurred on March 5, 2007, where Plaintiff Burns alleges excessive force claims against Lieutenant Kearns and CO Shaeffer. These claims have also been brought against Warden Zook and MCCF. The last instance occurs on March 16, 2007, where Plaintiff Sassaman alleges excessive force claims against Lieutenants Weaver and Kearns after he was removed from his cell and restrained. These claims have also been brought against Warden Zook and MCCF.

## 3. Discussion

Under Rule 21 of the Federal Rules of Civil Procedure, "[p]ersons may join in one action as plaintiffs if . . . they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction,

---

[1] Taylor has since been removed as a party to this suit.

occurrence, or series of occurrences; and any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. Pro. 21(a). In the Third Circuit, "joinder of claims, parties and remedies is strongly encouraged." *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)).

Here, the claims against Defendants are all the same. Namely, that Defendants used excessive force, and had a pattern and practice of using excessive force, against Plaintiffs. In addition, the Defendants are the same. Granted, in certain instances different Defendants were present, but generally all of the claims are against the same set of Defendants. Finally, the claims in this case all arise out of the same series of transactions and occurrences. All the claims arise from a twenty-month period when Defendants were employed by Mifflin County Correctional Facility and in charge of Plaintiffs.

Judicial economy also warrants the continued joinder of these claims. Not only are the claims for relief asserted jointly and severally, arise out of the same set of transactions or occurrences and involve similar questions of fact and law, but the economic impact of severance is very high. Severance would require the imposition of four separate trials, requiring four separate juries, but with almost the exact same set of witnesses at each.

The court disagrees with Defendants' contention that a jury will be confused by the issues, especially in light of the fact that the issues in this case are identical- that Defendants used excessive force and had a pattern and practice of using excessive force, against Plaintiffs. In addition, the court does not believe that Defendants will be unduly prejudiced by the continued joinder of the parties. If anything, Defendants may benefit by being able to establish that Plaintiffs engaged

in continued and unabated reckless behavior requiring heightened action by Defendants.

Furthermore, to ensure that the jury will not be confused the court will allow notes to be taken during trial. In addition, a chart may be created outlining for the jury which specific claims relate to which Plaintiff and Defendant on each of the dates in question and other information the court approves of that might be helpful for the jury.

For the above reasons, Defendants' motion for severance and separate trials, (Doc. 130), will be denied.

### B. Defendants' Motion in Limine to Preclude Testimony and/or Evidence Relating to Dissimilar Complaints Against and Evaluations of Brian Taylor not Involving Unconstitutional Force or not Otherwise Related to Plaintiffs' Claims

#### 1. Procedural History

On November 10, 2009, Defendants filed a Motion in Limine to exclude certain evidence relating to CO Taylor. (Doc. 118.) Plaintiffs filed an opposition brief on November 20, 2009. No reply brief was filed. For the reasons that follow the motion will be granted in part and denied in part.

#### 2. Relevant Facts

CO Taylor was originally a party in this case and was involved in Plaintiff Zimmerman's cell extraction and later restraint. Once Zimmerman had been restrained, CO Taylor used an Electronic Body Immobilizing Device ("EBID") on Zimmerman. Taylor was terminated and later criminally prosecuted for his misconduct. Zimmerman alleges that Warden Zook and MCCF are responsible for Taylor's actions because they knew of Taylor's propensity for violence due to

4

certain aspects of his employment history.[2] Taylor has since been dismissed from this case and is expected to testify on Plaintiffs' behalf.

### 3. Discussion

The court concludes that evidence relevant to the issue of Warden Zook and MCCF's knowledge of Taylor's propensity to use force or the prison's management system generally will be admissible. Other evidence relating to CO Taylor will not be permitted.

Evidence is admissible in a case if it is relevant. Fed. R. Evid. 402. Relevant evidence is any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In order to prove *Monell* liability of MCCF, Plaintiffs must show "a direct causal link between a . . . policy or custom [of MCCF] and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

In this case, evidence showing Warden Zook and/or MCCF knew of Taylor's propensity for violence may be relevant to prove liability. In addition, evidence showing the general management of MCCF condoned violent behavior may be relevant to show liability. Evidence showing Warden Zook and/or MCCF had a policy of custom which condoned unconstitutionally use of force will be admissible. However, evidence of Taylor's interactions with female inmates, or Taylor's general character (i.e. poor communication skills), is not relevant to either Warden Zook's or MCCF's liability and will not be admitted. The court will grant Defendants' motion in this limited regard.

---

[2] As the court noted in its Summary Judgment memorandum, Taylor had the following issues: alleged inappropriate conduct with female inmates, poor interpersonal skills, poor oral communication skills which bordered on offensive, inability to accept constructive criticism well, and apathetic to the sensitivities of staff and inmates. (Doc. 116 at 11-13.)

5

### C. Defendants' Motion in Limine to Preclude the use or Admission of Plaintiffs' Captioned Extraction Video and Accompanying Transcript

#### 1. Procedural History

On November 10, 2009, Defendants filed a Motion in Limine, and supporting brief, to exclude the captioning and transcript of video of events which took place on September 11, 2005. (Doc. 132.) Plaintiffs filed an opposition brief on November 20, 2009. Defendants filed a reply brief on November 25, 2009. For the reasons that follow the motion will be granted.

#### 2. Relevant Facts

On September 11, 2005, Plaintiff Zimmerman and his cell mate were causing a disturbance, an extraction team was assembled to remove them from their cell. (Br. in Supp. Mot. in Limine, Doc. 133, at 4.) Per MCCF policy, a videotape was set up to record Plaintiff Zimmerman's behavior prior to the extraction and the extraction itself. (*Id.*) This videotape was produced during discovery. Plaintiffs have provided the court with a captioned version of the videotape as well as with a transcript. No affidavit or declaration was attached outlining who made the caption of transcript or that they are true and accurate.

#### 3. Discussion

In this case, the original un-captioned video is the best evidence regarding the incidents that occurred on September 11, 2005. Although at times the sound quality is not the best, the video plainly depicts what took place on the date in question. Although Plaintiffs' captioned interpretation of the events may be useful to a jury, the jurors themselves can glean what they would like from the video. Furthermore, the video will be admitted in to evidence and will be available to the jury during deliberations. If there is something unclear, the jury will be able to

replay the video at their convenience. Defendants' motion on this issue will be granted.

### D. Defendants' Motion in Limine to Limit the Reports and Opinions of Plaintiffs' Expert Kathleen M. Young, M.D.

#### 1. Procedural History

On November 10, 2009, Defendants filed a Motion in Limine, and supporting brief, to limit the testimony of one of Plaintiffs' experts. (Doc. 126.) Plaintiffs filed an opposition brief on November 20, 2009. No reply brief was filed. For the reasons that follow the motion will be granted.

#### 2. Relevant Facts

Plaintiffs Zimmerman and Searer have produced reports from expert Kathleen M. Young, M.D., showing that they have suffered mental and/or emotional harm due to Defendants' conduct. (Br. in Supp. of Mot. in Limine, Doc. 127, at 3.) Doctor Young's reports make reference to terms such as "unlawful, cruel, and inhumane treatment." (Br. in Supp. of Mot. in Limine, Doc. 127, Ex. A at 1 and 30, Ex. B at 1 and 12.) Doctor Young's reports also state that Searer was "tortured" and Zimmerman was "pummeled" by guards at MCCF. (*Id.*, Ex. A at 29, Ex. B at 12.) Defendants wish to have Young's testimony limited so as not to use these terms as they are "inappropriate and inadmissible legal conclusions." (*Id.* at 5.)

#### 3. Discussion

Any statements regarding legal conclusions made by Doctor Young will not be admitted. Under Federal Rule of Evidence 704 courts may allow an expert "to give testimony that 'embraces an ultimate issue to be decided by the trier of fact,' [however,] an expert witness is prohibited from rendering a legal opinion." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (quoting *United States v. Leo*, 941 F.2d 181 (3d Cir. 1991)).

Doctor Young will not be permitted to use the terms "unlawful," "cruel," "inhumane." or "torture," as these permit her to render a legal conclusion to which she is not qualified to testify. In addition, the term "pummeled" may only be used if this is the term used by Zimmerman to explain what happened to him. However, if this is Doctor Young's own interpretive term than it may not be used. To this extent, Defendants' motion will be granted.

### E. Defendants' Motion in Limine to Preclude the Unsworn Declaration of Robert Guthridge

Plaintiff's have submitted that they will no longer be seeking the admittance of Robert Guthridge's declaration. Therefore, the court will consider this motion unopposed and as such, will grant it without further discussion.

### F. Defendants' Motion in Limine to Preclude Testimony and/or Evidence Relating to Mifflin County Correctional Facility's Use of Restraints Against Other Inmates

#### 1. Procedural History

On November 10, 2009, Defendants filed a Motion in Limine, and supporting brief, to preclude evidence of MCCF's use of restraints on other inmates not related to this action. Plaintiffs filed an opposition brief on November 20, 2009. A reply brief was filed on November 25, 2009. The court will grant Defendants' motion.

#### 2. Relevant Facts

Plaintiffs would like to introduce evidence that on at least forty-five previous occasions Defendants have used mechanical restraints on inmates. This evidence is in the form of reports that were sent to the Pennsylvania Department of Corrections shortly after the use of restraints occurred. Plaintiffs have not argued that these reports detail the facts behind each use of restraints, instead Plaintiffs only mention the length of time each inmate was restrained.

8

### 3. Discussion

To establish *Monell* liability under a failure to train theory, a plaintiff must show either "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. DeSimone*, 159 F.3d 120, 127 (3d Cir. 1998).

In this case, there is so far no evidence that the incidents contained in the reports are at all similar to the incidents alleged in this case. The allegation here is that excessive force was used against Plaintiffs. There is no evidence that excessive force was used in any of the cases documented in the reports in question. Plaintiffs appear to be asking the court to allow the jury to infer that excessive force occurs after a certain time threshold in a restraint chair; however, there is no evidence — either expert or otherwise — currently before the court stating that a definite length of time in restraints is per se excessive.

Thus, Defendants' motion will be granted.

### G. Defendants' Motion in Limine to Preclude Testimony and/or Evidence Relating to Warden Zook's Termination From the Pennsylvania Department of Corrections and Other Alleged Incidents of Unconstitutional Force

#### 1. Procedural History

On November 10, 2009, Defendants filed a Motion in Limine, and supporting brief, to exclude certain evidence relating to Warden Zook. (Doc. 120.) Plaintiffs filed an opposition brief on November 20, 2009. A reply brief was filed on November 25, 2009. For the reasons that follow, Defendants' motion will be denied.

### 2. Relevant Facts

Prior to working for MCCF, Warden Zook was a CO with the Pennsylvania Department of Corrections. (Doc. 116, at 2.) He was fired from the Department of Corrections in 1988 for using excessive force against an inmate and for falsifying records. (*Id.*; Br. Supp. of Mot. in Limine, Doc. 121, at 4.) Zook was hired as a CO by Mifflin County in 1988. It is undisputed that Zook disclosed to Mifflin County that he was fired for using excessive force, but the extent of his disclosure regarding the falsification of reports is debated by the parties. (Br. Opp. to Mot. in Limine, Doc. 156, at 4; Br. Supp. of Mot. in Limine, Doc. 121, at 4.) In 2002, Zook applied for the Warden position at MCCF, and in 2003 he was awarded the position. (Br. Opp. to Mot. in Limine, Doc. 156, at 4; Br. Supp. of Mot. in Limine, Doc. 121, at 4.) No allegations of excessive force were lodged against Zook between the time he was hired at MCCF and the time he was promoted to Warden. After becoming Warden, Zook would talk about his termination from the Department of Corrections during excessive force training sessions. (Br. Opp. to Mot. in Limine, Doc. 156, at 4.)

After becoming Warden, there are two instances where it is alleged Zook used excessive force against two inmates not involved with this action. These incidents occurred in the presence of at least one other guard who will testify as to what happened. (Br. Opp. to Mot. in Limine, Doc. 156, at 5; Br. Supp. of Mot. in Limine, Doc. 121, at 5.) There is no information to suggest that any formal complaints or grievances were filed with regard to these alleged incidents.

### 3. Discussion

Because Warden Zook discussed his termination from the Department of Corrections with other COs or used this information in trainings, it will be admissible. However, this information will not be admissible to establish *Monell*

10

liability as it was too attenuated in time. *See generally Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (1996); *Smith v. City of Phila.*, 2009 WL 3353148, *5 (Oct. 19, 2009, E.D. Pa. 2009). The evidence regarding the two instances of alleged excessive force by Warden Zook will be admitted to prove knowledge. However, this information will also not be admitted to prove *Monell* liability.

### a. Termination from Department of Corrections

Generally, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). However, Plaintiffs claim this evidence should be admitted to prove *Monell* liability. The court need not decide whether this is impermissible character evidence, or permissible evidence under *Monell*, as Warden Zook volunteered this information on multiple occasions to various officers.

### b. Specific Instances of Misconduct

Under the Federal Rules of Evidence, "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ." Fed. R. Evid. 404(b).

In this case, the two specific instances of misconduct outlined in the briefings will be admitted for the limited purpose of showing Warden Zook's knowledge and intent. Defense counsel shall submit to the court a proper limiting instruction for the jury explaining for what purpose this evidence may be used. This evidence may not be used to establish *Monell* liability as there is nothing before the court indicating that MCCF was aware of the alleged incidents.

For the aforementioned reason, Defendants' motion on this issue will be denied with regard to all Defendants except MCCF.

### H. Defendants' Motion in Limine to Preclude Plaintiffs from Introducing the Testimony of Barry Mintzes, Ph.D. and to Strike his Report

#### 1. Procedural History and Relevant Facts

On November 10, 2009, Defendants filed a Motion in Limine, and supporting brief, to exclude certain evidence relating to a report done by Doctor Barry Mintzes, Ph. D. regarding the appropriateness of policies and procedures at MCCF. (Doc. 128.) Plaintiffs filed an opposition brief on November 20, 2009. A reply brief was filed on November 25, 2009. After a conference call, Plaintiffs submitted a proffer of Doctor Mintzes testimony. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

#### 2. Discussion

After reviewing the proffer, the court finds that Doctor Mintzes' testimony will be relevant and appropriate as outlined in the proffer. Defendants' motion is denied.

### I. Plaintiffs' Motion in Limine Regarding Each Plaintiff's Character, Criminal History and Convictions

#### 1. Procedural History

On November 10, 2009, Plaintiffs filed a Motion in Limine, and supporting brief, to exclude certain evidence relating to each Plaintiff's character and criminal history. (Doc. 140.) Defendants filed an opposition brief on November 20, 2009. A reply brief was filed on November 27, 2009. For the reasons that follow, Plaintiffs' motion will be granted in part and denied in part.

#### 2. Relevant Facts

Each Plaintiff has a criminal history. In addition, each Plaintiff has submitted a psychiatric report to support their claims of mental and emotional distress. These reports contain information regarding each Plaintiff's character and

criminal history. Some of this criminal history stems from incidents which occurred when the Plaintiffs were juveniles. This history also includes both misdemeanor and felony convictions for some of the Plaintiffs.

### 3. Discussion

Character evidence is generally not admissible to prove conformity therewith. Fed. R. Evid. 404(a). However, there are exceptions to this general rule.

First, this evidence is admissible to show Defendants' state of mind under Federal Rule of Civil Procedure 404(b). This evidence is necessary because, as this court noted, part of the analysis of an excessive force claim is to establish "whether the force used was applied in good faith to maintain or restore discipline, or instead sadistically or maliciously to cause harm." (Doc. 116, at 31.) However, this only applies to conduct that occurred while Plaintiffs were incarcerated at MCCF under the supervision of Defendants. This does not apply to Plaintiffs criminal history.

Second, if any Plaintiff takes the stand, evidence of adult convictions involving elements of *crimin falsi* and/or felonies will be admitted for impeachment purposes if committed within the last ten years. Fed. R. Evid. 609(a)-(b).

Lastly, Plaintiffs' psychiatrists may be cross-examined concerning any criminal history upon which they relied when forming the basis for their opinions. Fed. R. Evid. 705.

As such, Plaintiffs' motion is denied with regard to incidents which occurred while Plaintiffs were incarcerated at MCCF which would tend to show Defendants' state of mind; felonies and crimes involving elements of *crimin falsi* committed within the last ten years used to impeach a Plaintiff on the stand; and cross-examination of Plaintiffs' psychiatrists on criminal history upon which they

13

relied in forming the basis of their opinions. In all other regards the motion is granted.

### J. Plaintiffs' Motion in Limine to Exclude Evidence Regarding Pennsylvania Department of Corrections or Other State Audits of MCCF

#### 1. Procedural History

On November 10, 2009, Plaintiffs filed a Motion in Limine, and supporting brief, to exclude certain evidence relating to audits conducted on MCCF by the Pennsylvania Department of Corrections. (Doc. 138.) Defendants filed an opposition brief on November 20, 2009. A reply brief was filed on November 27, 2009. For the reasons that follow, Plaintiffs' motion will be granted in part and denied in part.

#### 2. Relevant Facts

Pursuant to state law, the Pennsylvania Department of Corrections conducted an annual audit of MCCF. Defendants produced evidence during discovery regarding the results of audits done between 2002 and 2008. Plaintiffs seek to have this evidence excluded as irrelevant.

#### 3. Discussion

Under Federal Rule of Evidence 402, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 402.

The audits conducted during the time period when these events took place — 2005 to 2007 — are relevant to show both the policy and practice of MCCF and to negate the charge that MCCF was deliberately indifferent to allegations of unconstitutional practices at the prison. Audits conducted outside this time period are irrelevant and will not be admitted. As such, Plaintiffs' motion is

14

granted as to audit conducted outside the 2005 to 2007 time period; the motion is denied as to these particular years.

**II.     Conclusion**[3]

For the aforementioned reasons, Defendants' motion for severance will be denied.  Defendants' following motions in limine will be granted: motion precluding the use of the captioned video or transcript; motion precluding testimony regarding MCCF's use of restraints on other individuals; and, motion precluding the unsworn declaration of Robert Guthridge.  Defendants' following motions in limine will be granted in part and denied in part: motion precluding evidence relating to complaints and evaluations of Brian Taylor; motion limiting the testimony of Doctor Young; motion precluding testimony relating to prior instances involving Warden Zook; motion precluding testimony of Barry Mintzes, Ph.D.

Plaintiffs motions in limine regarding each Plaintiff's character and criminal history will be granted in part and denied in part.  Likewise, Plaintiffs' motion in limine seeking to exclude evidence of audits conducted on MCCF will be granted in part and denied in part.  All other Plaintiffs' motions in limine will be deemed moot.

                                                              s/Sylvia H. Rambo
                                                              United States District Judge

Dated:  December 16, 2009.

---

[3] There are two additional outstanding Plaintiffs' motions in this case (Docs. 134, 136); however, Defendants have acceded to both of them and the court will therefore consider them moot.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DUSTIN ZIMMERMAN,** *et al.*, : Civil No. 1:06-CV-1893
:
Plaintiffs : **JUDGE SYLVIA H. RAMBO**
:
v. :
:
**CRAIG SCHAEFFER,** *et al.*, :
:
Defendants :

# **O R D E R**

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) Defendants' Motion for Severance and Separate Trials (Doc. 130) is **DENIED**.

2) Defendants' Motion in Limine to Preclude Testimony and/or Evidence Relating to Dissimilar Complaints Against and Evaluations of Brian Taylor, (Doc. 118), is **GRANTED in part** and **DENIED in part**:

    a) The motion is **GRANTED** insofar as any evidence relating to Taylor's interactions with female inmates, or Taylor's general character.

    b) The motion is **DENIED** as to evidence showing Warden Zook and/or MCCF knew of Taylor's propensity for violence.

    c) The motion is **DENIED** as to evidence showing that the management atmosphere of MCCF condoned violent behavior.

d) The motion is **DENIED** as to evidence showing Warden Zook and/or MCCF had a policy or custom which condoned unconstitutionally use of force.

3) Defendants' Motion in Limine To Preclude the Use or Admission or Plaintiffs' Captioned Extraction Video and Accompanying Transcript (Doc. 132) is **GRANTED**.

4) Defendants' Motion in Limine to Limit the Reports and Opinions of Plaintiffs' Expert Kathleen M. Young, M.D., (Doc. 126), is **GRANTED in part** and **DENIED in part** as follows:

a) the Defendants' motion is **GRANTED** insomuch as Doctor Young may not use the terms "unlawful," "cruel," "inhumane." or "torture." In addition, the term "pummeled" may only be used if this is the term used by Zimmerman to explain what happened to him. However, if this is Doctor Young's own interpretive term than it may not be used.

b) in all other respects the motion is **DENIED**.

5) Defendants' Motion in Limine to Preclude the Unsworn Declaration of Robert Guthridge, (Doc. 124), is **GRANTED**.

6) Defendants' Motion in Limine to Preclude Testimony and/or Evidence Relating to Mifflin County Correctional Facility's use of Restraints Against Other Inmates, (Doc. 122), is **GRANTED**.

7) Defendants' Motion in Limine to Preclude Testimony and/or Evidence Relating to Warden Zook's Termination From the Pennsylvania Department of Corrections and Other Alleged Incidents of Unconstitutional Force (Doc. 120) is **GRANTED in part** and **DENIED in part**.

a) it is **GRANTED** with regard to MCCF's *Monell* liability.

   b) it is **DENIED** as to all other Defendants.

 8) Defendants' Motion in Limine to Preclude Plaintiffs From Introducing the Testimony of Barry Mintzes, Ph.D. and to Strike is Report (Doc. 128) is **GRANTED in part** and **DENIED in part** as follows:

   a) it is **GRANTED** insofar as Doctor Mintzes may not testify to anything outside Plaintiffs proffer.

   b) is it **DENIED** as to those areas of expertise contained in Plaintiffs proffer.

 9) Plaintiffs' Motion in Limine Regarding Each Plaintiff's Character, Criminal History, and Convictions (Doc. 140) is **GRANTED in part** and **DENIED in part** as follows:

   a) The motion is **DENIED** with regard to incidents which occurred while Plaintiffs were incarcerated at MCCF which would tend to show Defendants' state of mind; felonies and crimes involving elements of *crimin falsi* committed within the last ten years used to impeach a Plaintiff on the stand; and cross-examination of Plaintiffs' psychiatrists on criminal history upon which they relied in forming the basis of their opinion.

   b) The motion is **GRANTED** in all other regards.

 10) Plaintiffs' Motion in Limine to Exclude Evidence Regarding Pennsylvania Department of Corrections or Other State Audits of MCCF, (Doc. 138), is **GRANTED** in part and **DENIED** in part as follows:

   a) The motion is **DENIED** with regard to audits conducted during the 2005-2007 time period.

   b) The motion is **GRANTED** with regard to all other time periods.

11) Plaintiffs' Motion in Limine to Exclude Evidence Regarding Criminal or Prison Records of Plaintiffs' Relatives, (Doc . 136), is deemed **MOOT**.

12) Plaintiffs' Motion in Limine to Exclude Evidence Regarding Tattoos, Including Racist Tattoos, Racist Organizations, or Racist Beliefs, (Doc. 134), is deemed **MOOT**.

                                                s/Sylvia H. Rambo
                                                United States District Judge

Dated: December 16, 2009.